*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EDDIE LEE SKELLETT,

        Defendant-Appellant.

UNPUBLISHED
March 3, 2020

No. 344600
Monroe Circuit Court
LC No. 17-244009-FC

Before: BECKERING, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of assault with intent to commit murder, MCL 750.83, and third-degree fleeing or eluding a police officer, MCL 257.602a(3). The jury acquitted defendant of additional charges of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f), and second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(f). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 20 to 40 years in prison for the assault conviction and 365 days in jail for the fleeing or eluding conviction, to be served concurrently. Defendant appeals as of right. We affirm defendant's convictions and sentences, but remand for further proceedings with respect to defendant's presentence report.

Defendant was convicted of physically assaulting DF during the early morning hours of August 14, 2017. DF is the cousin of SM, who previously lived with defendant but had broken up with him before the offense. On the morning of August 14, DF accompanied SM to defendant's home so that SM could retrieve her belongings. SM had communicated with defendant earlier that evening, so defendant was aware that SM was coming to his home. According to both DF and SM, the door to defendant's home was open when they arrived and defendant was in the living room, with only a dim light on. DF sat down in the living room while defendant and SM talked. Defendant questioned why DF was there and asked SM how they were supposed to do anything with her present. Defendant then told SM that he would "take care of her" (referring to DF). Defendant went into his bedroom and retrieved a sword. According to SM, defendant slashed at DF several times with the sword. DF sustained a severe cut to her face and fell to the floor.

SM and defendant fought over the sword while defendant also tried to force SM into his bedroom. According to SM, she eventually gave up and went into the bedroom with defendant, where he then performed sexual acts on her. When defendant left the bedroom to check on DF, SM jumped out a window, ran to a nearby house for help, and the police were contacted. DF was also able to escape and she went to another neighbor's home and also called for assistance. Defendant left his house in his vehicle. A police officer spotted defendant near his house and attempted to initiate a traffic stop of defendant's vehicle, but defendant evaded the officer and drove away, resulting in a police chase. Defendant eventually lost control of his vehicle, crashed into a tree, and was taken into custody.

The defense theory at trial was self-defense. Defendant claimed that he armed himself with the sword because he believed someone had entered his home. Because his house was dark, he could not see who was inside and he feared for his safety. He described using the sword in a slashing motion only one time, which resulted in the cut to DF's face. Defendant could not explain why DF had other injuries to her head and neck.

Defendant was charged with assault with intent to commit murder for the assault against DF, fleeing or eluding a police officer, and two counts of criminal sexual conduct (CSC) for engaging in sexual penetration and sexual contact with SM, causing personal injury. The jury acquitted defendant of the CSC offenses, but found him guilty of assaulting DF and fleeing from the police.

## I. COUNSEL'S ISSUES

## A. EXPERT WITNESS

Defendant argues that the trial court violated his constitutional rights to due process and to present a defense by denying his request for the appointment of a medical expert to support his theory that DF's injuries were consistent with a single slash, not several slashes, which would have supported his claim that he acted in self-defense. Claims of constitutional error are reviewed de novo. *People v Kennedy*, 502 Mich 206, 213; 917 NW2d 355 (2018).

Defendant sought the appointment of a medical expert to determine how many times DF was struck with the sword, which defendant argued was probative of his claim of self-defense. Defendant maintained that he cut DF only once, whereas DF and SM had both testified at the preliminary examination that defendant swung the sword repeatedly at DF. The trial court denied defendant's requested for appointment of an expert, reasoning as follows:

> I will say this much, there is no medical expert that is needed to provide any kind of testimony that she was struck once or more than once. That is within a reasonable commonsense jury's province to determine that. That is what cross-examination is about. And you can try to eviscerate the testimony of this victim to establish that it was just one blow. And to be honest with you, I don't know what difference it, quite frankly, makes with this kind of severity of injury and with the charges that are proffered here.
>
> You are even entitled, in my opinion, Mr. Fleming, to have the medical records of this victim. That would definitely even establish that you are probably

even entitled perhaps, with the assistance of the prosecutor, to speak to her doctor about that, but it does not require an expert here.

There is nothing within the realm of science that brings any of this—this kind of thing into play, in this Court's opinion. These are just everyday type [sic] of matters to be submitted to a jury, and to whatever extent it is, what weight it should be given, if she was struck once or more than once, that's for the jury to decide. And then he can pitch his defense to the jury.

So, the Court can't find that there's any need for any medical expert testimony required in this case, and I'm not going to grant a motion for any kind of a forensic pathologist.

At trial, SM testified that defendant went "crazy with the sword" on DF, slashing at her at least six or seven times. Although DF had previously testified that she was struck multiple times, she testified at trial that she could only recall being struck with the sword the first time because she blacked out after that. Defendant testified that he swung the sword to get out of the house and struck DF only one time. Defendant could not explain why DF had other injuries to her neck and head.

At the time the trial court denied defendant's request for an expert, a trial court's decision whether to grant funds for expert assistance for an indigent defendant was governed by MCL 775.15 and *People v Tanner*, 469 Mich 437; 671 NW2d 728 (2003), overruled in *Kennedy*, 502 Mich at 225. Pursuant to these authorities, to obtain appointment of an expert, an indigent defendant was required to "demonstrate a nexus between the facts of the case and the need for an expert." *Tanner*, 469 Mich at 442-443. After defendant was convicted, our Supreme Court decided *Kennedy*, which modified the standards for appointment of an expert for an indigent criminal defendant. The *Kennedy* decision applies retroactively. *People v Propp*, ___ Mich App ___; ___ NW2d ___ (2019) (Docket No. 343255); slip op at 4, lv pending.

In *Kennedy*, 502 Mich at 222-223, the Supreme Court held that MCL 775.15 was never intended to address requests by indigent defendants for the assistance of experts at state expense. Instead, the Court followed *Ake v Oklahoma*, 470 US 68; 105 S Ct 1087; 84 L Ed 2d 53 (1985), which analyzed such requests under the Fourteenth Amendment's due-process guarantee of fundamental fairness to determine whether the defendant has been provided with the basic tools necessary to present an adequate defense. *Kennedy*, 502 Mich at 214-225. The Court held that under the due-process standard, a defendant is required to "show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." *Id.* at 228. The Court adopted the articulation of the "reasonable probability standard" set forth in *Moore v Kemp*, 809 F2d 702 (CA 11, 1987), explaining:

A majority of states confronting this problem have adopted a reasonable probability standard. In *Moore v Kemp*, the United States Court of Appeals for the Eleventh Circuit discussed this standard as follows:

-3-

[A] defendant must demonstrate something more than a mere possibility of assistance from a requested expert; due process does not require the government automatically to provide indigent defendants with expert assistance upon demand. Rather . . . a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial. Thus, if a defendant wants an expert to assist his attorney in confronting the prosecution's proof—by preparing counsel to cross-examine the prosecution's experts or by providing rebuttal testimony—he must inform the court of the nature of the prosecution's case and how the requested expert would be useful. At the very least, he must inform the trial court about the nature of the crime and the evidence linking him to the crime. By the same token, if the defendant desires the appointment of an expert so that he can present an affirmative defense, such as insanity, he must demonstrate a substantial basis for the defense, as the defendant did in *Ake*. In each instance, the defendant's showing must also include a specific description of the expert or experts desired; without this basic information, the court would be unable to grant the defendant's motion, because the court would not know what type of expert was needed. In addition, the defendant should inform the court why the particular expert is necessary. We recognize that defense counsel may be unfamiliar with the specific scientific theories implicated in a case and therefore cannot be expected to provide the court with a detailed analysis of the assistance an appointed expert might provide. We do believe, however, that defense counsel is obligated to inform himself about the specific scientific area in question and to provide the court with as much information as possible concerning the usefulness of the requested expert to the defense's case.

We believe that the standard articulated in *Moore* strikes the right balance between requiring too much or too little of a defendant seeking the appointment of an expert under *Ake*. Therefore, we adopt *Moore*'s reasonable probability standard as the appropriate standard for courts to apply in determining whether an indigent criminal defendant is entitled to the appointment of an expert at government expense under *Ake*'s due process analysis. In particular, we hold that "a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." [*Kennedy*, 502 Mich at 226-228.]

Applying *Kennedy* to this case, we conclude that defendant has failed to show that the trial court's refusal to appoint an expert to assist in his defense violated his right to due process. First, the record does not show that there was a reasonable probability that an expert would have assisted defendant. Defendant argued that an expert was needed to determine how many times DF was

struck with the sword, which he claimed was probative of his claim of self-defense. Defendant claimed that he cut DF only one time. Defendant argued that if an expert could confirm that DF suffered only a single wound to her cheek, it would support his claim that he acted in self-defense. Defendant acknowledged that DF had other injuries, but he denied causing them. Although defendant argued that a medical expert was necessary to help defense counsel prepare to cross-examine the prosecution's expert witnesses, the prosecution did not present any experts at trial regarding DF's injuries. We believe the trial court correctly approached the issue by analyzing whether the assistance of an expert was necessary to evaluate the nature of DF's injuries. Other evidence was available to assess DF's injuries, including photographs of her injuries and her medical records, as well as her own testimony regarding the nature of the injuries and her appearance at trial. Moreover, although defendant may be correct that the number of wounds received by DF would be probative of defendant's claim that he swung the sword only once, an expert would not have been able to offer testimony regarding defendant's intent in striking DF (i.e., that he was acting in self-defense), even if her injury was consistent with being struck only one time. Further, an expert would not have been able to determine whether defendant may have swung at DF additional times without striking her. Thus, defendant did not show that an expert was necessary to support his claim that he struck DF only one time in self-defense.

Second, defendant has not shown that the court's decision to deny him funds for an expert resulted in a fundamentally unfair trial. As noted, defendant admitted that DF had other unexplained injuries, in addition to the severe cut to her face. During the direct examination of DF, she was shown photographs of her face, including other injuries to her head and neck. She testified that she received those injuries that night, but did not know how she received them. DF's medical records indicate that she had a large laceration from the corner of the left side of her mouth to the middle of her left cheek, which extended through the cheek and into the mouth. Although SM testified that defendant slashed at DF multiple times with the sword, it is undisputed that DF suffered only the large laceration to her face. She had other injuries, but did not have any other cuts. It was up to the jury to decide if the other injuries were caused during the assault or if DF might have suffered them trying to escape. The medical records and DF's testimony that she could only recall a single laceration to her face enabled defendant to argue, without the aid of an expert, that her injuries were caused by only a single slash. Because defendant wanted an expert only for the purpose of supporting his theory that he cut DF only once with the sword, and there was other medical evidence and testimony to support that theory, defendant has not established that an expert was needed to prove that point. Defendant did not intend to use an expert to explain DF's other bruises and injuries, and an expert also would not have been able to offer testimony regarding either defendant's intent when he cut DF with the sword or whether defendant may have swung at DF additional times without striking her. Accordingly, defendant has not demonstrated that it is reasonably probable that the denial of an expert resulted in a fundamentally unfair trial.

## B. JURY INSTRUCTIONS

Defendant argues that defense counsel was ineffective for failing to request certain jury instructions. Defendant did not raise an ineffective-assistance claim in the trial court and this Court

denied his motion to remand with respect to this issue.[1] Because an evidentiary hearing was not held, our review of this issue is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant that he was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996).

Defendant first argues that defense counsel was ineffective for not requesting a jury instruction on the lesser included offense of assault with intent to do great bodily harm less than murder. "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002), overruled in part on other grounds by *People v Mendoza*, 468 Mich 527 (2003). Whether to request instruction on lesser included offenses is a matter of trial strategy and a difference of opinion regarding trial strategy does not amount to ineffective assistance of counsel. *People v Robinson*, 154 Mich App 92, 93-94; 397 NW2d 229 (1986).

During discussions at trial, the parties agreed that assault with intent to do great bodily harm qualified as a lesser included offense of assault with intent to commit murder, but defense counsel confirmed that he was not asking for an instruction on assault with intent to do great bodily harm. Defendant did not deny assaulting DF, but claimed that he acted in self-defense. During closing argument, defense counsel focused on whether defendant was guilty of any offense given the testimony that he struck DF in self-defense. Counsel argued that defendant feared for his life, so his use of deadly force was justified. Defendant has not overcome the presumption that defense counsel's failure to request an instruction on assault with intent to do great bodily harm was objectively reasonable considering the defense theory of self-defense. It was not unreasonable for counsel to forgo an instruction on assault with intent to do great bodily harm where it was the defense theory that defendant was not guilty of any offense because he acted in lawful self-defense.

Defendant also argues that defense counsel was ineffective for declining an instruction consistent with M Crim JI 17.4(1), which provides:

> The defendant can only be guilty of the crime of assault with intent to commit murder if [he / she] would have been guilty of murder had the person [he / she] assaulted actually died. If the assault took place under circumstances that

---

[1] *People v Skellett*, unpublished order of the Court of Appeals, entered March 28, 2019 (Docket No. 344600).

would have reduced the charge to manslaughter if the person had died, the defendant is not guilty of assault with intent to commit murder.

The record indicates that defense counsel initially requested that the court give this instruction, but then agreed that the instruction should not be given because it would be confusing to the jury under the circumstances.

Defendant has not explained why counsel erred by conceding that the instruction should not be given to avoid juror confusion. Regardless, defendant has not demonstrated that he was prejudiced by counsel's failure to request the instruction. The issue for the jury to resolve was whether defendant struck DF in self-defense, and the trial court instructed the jury on self-defense. Defendant does not explain what factual circumstances existed that would have allowed the jury to rationally find that, if DF had died, defendant would have been guilty only of manslaughter, but did not act in self-defense. In his brief on appeal, defendant asserts that the facts would have supported a manslaughter conviction if DF had died because defendant "acted based on the emotional excitement and fear created by finding two individuals he believed to be intruders in his house at approximately 4:30 a.m."[2] However, these were the same facts offered in support of defendant's claim that he acted in self-defense and the jury rejected that claim. Accordingly, there is no reasonable probability that the outcome of defendant's trial would have been different if the instruction had been given. Therefore, defendant has not established that he was prejudiced by counsel's failure to request this instruction.

## C. PROSECUTORIAL MISCONDUCT

Next, defendant argues that the prosecutor made improper arguments during closing argument, which denied him a fair trial. Defendant concedes that there was no objection to the prosecutor's remarks at trial. Review of an unpreserved claim of prosecutorial misconduct "is limited to whether plain error affecting substantial rights occurred." *People v Abraham*, 256 Mich App 265, 274-275; 662 NW2d 836 (2003). This Court will not reverse if the prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction from the trial court. *People v Williams*, 265 Mich App 68, 70-71; 692 NW2d 722 (2005), aff'd 475 Mich 101 (2006).

Claims of prosecutorial misconduct are decided case by case and the challenged conduct must be viewed in context. *People v McElhaney*, 215 Mich App 269, 283; 545 NW2d 18 (1996). The test for prosecutorial misconduct is whether the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995).

A prosecutor is afforded great latitude during closing argument. A prosecutor may not make a statement of fact that is unsupported by the evidence, but he is permitted to argue the evidence and reasonable inferences arising from the evidence in support of his theory of the case.

---

[2] "Voluntary manslaughter requires a showing that (1) defendant killed in the heat of passion, (2) this passion was caused by an adequate provocation, and (3) there was no lapse of time during which a reasonable person could have controlled his passions." *People v Roper*, 286 Mich App 77, 87; 777 NW2d 483 (2009).

*Bahoda*, 448 Mich at 282; *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003). Although a prosecutor must refrain from making prejudicial remarks, he is not required to phrase his arguments in the blandest of terms and he may use "hard language" when the evidence supports it. *Bahoda*, 448 Mich at 282; *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). A prosecutor may comment on the credibility of a witness, but he may not vouch for a witness's credibility by suggesting that he has some special knowledge about the witness's truthfulness. *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011); *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004).

Defendant argues that the prosecutor improperly advanced the theory during closing argument that it was defendant's belief that SM would reconcile with him, that the two would engage in sexual activity that evening, and that SM would move with him to Flint, but when SM arrived at defendant's home with DF to retrieve her belongings, defendant realized that SM did not intend to reconcile or engage in sexual activity with him that evening, causing him to react by assaulting DF in a fit of rage. Defendant argues that there was no evidence to support this theory. We disagree.

Evidence was presented that SM had broken up with defendant and that, the day before the charged offenses, SM had refused to go home with defendant and instead chose to stay with her ex-husband. Thereafter, on the day of the offenses, SM took DF with her to defendant's home because she only intended to retrieve her belongings and wanted someone with her. It was reasonable for the prosecutor to infer from this evidence that defendant was upset when SM arrived at his home with DF because he realized then that SM did not intend to stay there. Defendant testified that he had obtained drugs for SM, presumably to entice her to his house. SM also testified that when she and DF arrived together, defendant asked how they were supposed to do anything with DF present, that defendant thereafter made a comment about "first taking care of her" (referring to DF), and then defendant "started going crazy with the sword on her." According to SM, defendant thereafter engaged in forcible sexual conduct with her. This evidence supports the prosecutor's theory that defendant had planned to engage in sex with SM, but DF's presence interrupted those plans, causing defendant to assault DF in a fit of rage. Accordingly, the prosecutor's arguments were not improper.

Defendant also argues that the prosecutor improperly commented on defendant's credibility, and improperly vouched for the credibility of SM and DF. In his rebuttal argument, the prosecutor made the following comments regarding defendant's credibility:

> What [defense counsel] points out—he points out a lot of things that are quite interesting. One of the things that he talks about is—is motive. He says—he says that his client doesn't have—he has no motive to—he has no—he has no motive to—to lie about what happened here. That's totally not true. He's got every reason to lie about what happened here. He's the one person that has the motive to make up a story because he's the one that's facing the penalties here from—from being found guilty of this charge.

> So, he's the only person with a motive to lie about anything here.

It was not improper for the prosecutor to argue that the serious charges defendant was facing gave him a motive to lie. A prosecutor properly may argue from the facts that a defendant is not worthy of belief. *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997).

Defendant also argues that the prosecutor improperly vouched for the credibility of SM and DF. The prosecutor's remarks were directed at facts in evidence, which the prosecutor argued showed that the witnesses were credible. The remarks did not involve improper vouching for credibility because the prosecutor did not imply or suggest that he had some special knowledge about the witnesses' truthfulness. *Thomas*, 260 Mich App at 455. Accordingly, the prosecutor's remarks were not improper.

Defendant also argues that defense counsel was ineffective for failing to object to the challenged remarks. However, because the remarks were not improper, any objection would have been futile. Defense counsel is not ineffective for failing to raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## D. DEFENDANT'S PRESENTENCE INVESTIGATION REPORT

Defendant argues that he is entitled to have errors corrected in his presentence investigation report (PSIR). At sentencing, defendant objected to the PSIR containing information about the CSC charges in this case. The trial court agreed to strike some information from the PSIR, but ruled that factual information related to the occurrence of sexual activity could remain, subject to a modification specifying that the jury did not convict defendant of any criminal sexual conduct offenses. This claim is preserved. On appeal, defendant also raises additional challenges to information in his PSIR that he did not raise at sentencing. These additional claims are unpreserved. We review the trial court's response to defendant's preserved claim for an abuse of discretion. *People v Lampe*, 327 Mich App 104, 120; 933 NW2d 314 (2019). Defendant's unpreserved claims are reviewed for plain error affecting defendant's substantial rights. *Id*. at 122.

Defendant argues that the trial court erred by refusing to strike from the probation agent's description of the offense in the PSIR all references to defendant's sexual conduct with SM. Defendant argues that this information should have been stricken because the jury acquitted him of the CSC charges. In *Lampe*, 327 Mich App at 120, this Court explained:

> "At sentencing, either party may challenge the accuracy or relevancy of any information contained in the presentence report." *Waclawski*, 286 Mich App at 689. "The information is presumed to be accurate, and the defendant has the burden of going forward with an effective challenge, but upon assertion of a challenge to the factual accuracy of information, a court has a duty to resolve the challenge." *Id*. "[T]he trial court must allow the parties to be heard and must make a finding as to the challenge or determine that the finding is unnecessary because the court will not consider it during sentencing." *Id*. at 689-690. "Once a defendant effectively challenges a factual assertion, the prosecutor has the burden to prove the fact by a preponderance of the evidence." *Id*. at 690. "If the court finds that challenged information is inaccurate or irrelevant, that finding must be made part of the record and the information must be corrected or stricken from the report." *Id*.

At sentencing, the trial court refused to strike paragraphs that contained only factual information regarding sexual activity on the night of the offenses, reasoning that defendant's acquittal of the CSC charges only meant that the jury found that no criminal act was committed, not that the sexual acts did not occur. The court did agree, however, to add a statement that "the jury did not convict the defendant of Criminal Sexual Conduct."

Contrary to defendant's argument on appeal, the trial court did not fail to provide reasons for its decision not to delete information about the sexual activity on the night of the offense. The court justified retaining that information because it was factual, it was supported by testimony at trial, and defendant's acquittal of the CSC charges only meant that the jury "found that there was no criminal act. They didn't necessarily find that there was no sexual act." Because defendant had relied on the fact that he was acquitted of the CSC charges to argue that the references to sexual acts should be deleted, the trial court's decision to modify the PSIR to clarify that the jury did not convict defendant of criminal sexual conduct was an appropriate response to defendant's challenge.

Defendant also argues that the information regarding the sexual acts should have been deleted because the information was "unsubstantiated." However, as the trial court observed when responding to defendant's challenge at sentencing, "she testifies to this . . . . It does not negate what she testified to. I sat through the trial myself, remember, and she testified to that." The trial court did not err by finding that the testimony at trial substantiated the sexual activity described by SM in the PSIR.

Despite the jury's verdict, SM's statements related to sexual activity were appropriately included as part of the circumstances of this case. MCR 6.425(A)(1)(b), which sets forth the requirements of a PSIR, requires that it include "a complete description of the offense and the circumstances surrounding it." Accordingly, it was appropriate for the trial court to allow SM's account of the events to remain in the PSIR to the extent that they factually described the circumstances surrounding the offenses for which defendant was convicted. We note that in *People v Beck*, ___ Mich ___; ___NW2d ___ (2019) (Docket No. 152934); slip op at 2, cert pending, our Supreme Court recently held that a trial court may not base a sentence on conduct for which a defendant was acquitted. Due process prohibits a court from finding by a preponderance of the evidence that a defendant engaged in conduct for which he was acquitted and basing a sentence on that finding. In this case, the trial court was cognizant of this limitation because it clearly stated that it was not considering SM's statements as evidence that defendant committed any CSC offense when sentencing defendant for the other counts, and it expressly agreed to correct the PSIR to specify that defendant was not convicted of any CSC offenses.

For these reasons, we hold that the trial court did not abuse its discretion by responding to defendant's challenges to the PSIR at sentencing. We note, however, that the copy of the PSIR that has been provided to this Court does not contain the corrections and modifications that the trial court agreed to make at sentencing, and it is unclear whether these changes have been made. Accordingly, we remand this case to the trial court to determine that the changes have been made. The court shall also ensure that defendant's attorney is provided with an opportunity to review the corrected report, and that a corrected report is sent to the Department of Corrections. See MCR 6.425(E)(2)(b).

Defendant's remaining claims of error were not raised at sentencing, and therefore, are reviewed for plain error affecting defendant's substantial rights. *Lampe*, 327 Mich App at 122. Defendant argues that page 10 of the PSIR inaccurately states that he was on probation at the time he was sentenced for a CSC offense that occurred in August 1981. Contrary to what defendant asserts, the PSIR does not state that defendant was *on* probation at the time he committed that offense, but rather that he was "sentenced *to* a probation term" for that offense. Defendant has not established any plain error with regard to this matter.

Defendant also argues that the PSIR inaccurately states that he "has twice been convicted of sexually assaulting minor children, one of which was his own daughter." Defendant appears to argue that this statement is inaccurate because, while he was convicted of CSC-II involving a person under the age of 13 years (his own daughter) in 1991, his other conviction of attempted CSC-III involved "sexual intercourse with a 17-year-old emancipated unrelated female," and thus did not involve a minor child, given that the age of consent in this state is 16 years old. See *People v Willis*, 504 Mich 905; 931 NW2d 1 (2019); MCL 750.520b to MCL 750.520e. While defendant is technically correct, we fail to see how this discrepancy affected defendant's substantial rights. The ages of the victims were otherwise accurately reported in the PSIR, it is undisputed that both cases involved victims who were not adults, and defendant does not dispute that the PSIR otherwise accurately reported the specific offenses for which he was convicted. Therefore, defendant is not entitled to relief with respect to this unpreserved issue.

## II.  DEFENDANT'S STANDARD 4 ISSUES

Defendant raises additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which warrant appellate relief.

## A.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises several additional claims of ineffective assistance of counsel. Because these claims were not raised below, our review is limited to errors apparent from the record. See *Matuszak*, 263 Mich App at 48.

Defendant's first attorney was allowed to withdraw due to a conflict of interest because he represented another potential witness in defendant's case. New counsel was appointed in January 2019, and defendant's trial began on March 19, 2019. Defendant first claims that new counsel was not prepared for trial, presumably due to the short time line after his appointment, but nothing in the record supports this claim. Defendant incorrectly states that counsel had only one month to prepare for trial, but the record shows that he had almost two months. In any event, there is no support in the record for defendant's claims that new counsel was unprepared, failed to prepare a defense strategy, or did not have the benefit of the work performed by defendant's first attorney.

Defendant also complains that counsel failed to present certain evidence or make necessary arguments. Counsel is presumed to have provided defendant with the effective assistance of counsel. *Lane*, 308 Mich App at 68.

> Decisions regarding whether to call or question a witness are presumed to be matters of trial strategy. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Trial counsel's failure to a call a witness is only considered ineffective

assistance if it deprived the defendant of a substantial defense. *Id*. A substantial defense is one that could have affected the outcome of the trial. See *People v Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994). Likewise, decisions regarding what evidence to present, what evidence to highlight during closing argument, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). This Court will not "second-guess counsel on matters of trial strategy," nor will it "assess counsel's competence with the benefit of hindsight." *Russell*, 297 Mich App at 716. [*People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).]

Defendant complains that defense counsel failed to present evidence suggested by defendant, but counsel's decisions regarding what evidence to present were strategic decisions and defendant does not explain how any evidence that counsel did not present might have made a difference in the trial's outcome. Counsel presented a self-defense theory at trial, consistent with defendant's wishes. Although defendant asserts that counsel did not address the element of intent to kill, the self-defense theory addressed defendant's intent.

Defendant complains that defense counsel allowed the prosecutor to capitalize on improper photographs, but he does not explain what photographs were improper, why they were improper, or how they might have affected the trial's outcome. Defendant asserts that "photos H1 & H3" were untrustworthy. Photographs of the crime scene were admitted at trial as People's Exhibits 1 through 70. Defense counsel did not object to the foundation or authenticity for those photographs, but no basis for an objection is apparent from the record. Defendant seems to argue that some of the photographs of DF's injuries were improper because they were taken four days after the offense and may have depicted DF's injuries or postsurgical condition that was not observed by the police and other witnesses at the time of the offense. However, nothing in the record suggests that the injuries depicted in the photos were not received by DF during the offense and defendant has not otherwise identified a proper basis on which counsel could have objected to the admission of the photographs.

Defendant also asserts that the appointment of new counsel somehow resulted in the suppression of evidence. Defendant does not explain the basis for this claim. Although he claims that evidence that should have been presented to the jury was never presented, he does not explain what evidence was missing or suppressed, or how this claim is related to any deficiency by counsel.

Defendant argues that defense counsel should have emphasized to the jury that the bruising injuries on DF could not have been caused by the sword because there were no distinctive marks in the bruises. We note that during deliberations, the jury asked to see the sword's handle and that photographs of DF's bruising showed a mark that was consistent with the sword's handle. The trial court noted at sentencing that the jury had asked to see the sword while deliberating for that reason. Considering these facts of record, defendant has not demonstrated that counsel should have handled this issue differently. Indeed, it appears that emphasizing the handle might have further supported the prosecution's case. Defendant has not overcome the presumption of sound trial strategy with regard to this issue.

Defendant raises arguments directed at whether the jury's verdict was against the great weight of the evidence, but these arguments have no bearing on whether counsel was ineffective.

Defendant also complains that counsel did not impeach witnesses with various inconsistencies, but these were matters of trial strategy left to counsel. Defendant has not overcome the presumption that counsel performed effectively and that his decisions involved reasonable strategy.

Defendant criticizes counsel for not emphasizing that defendant is a disabled military veteran. However, it was brought out during defense counsel's examination of defendant that he had various health issues and did not have the strength to lift SM during their encounter in the street the day before the offense. Defendant testified that he was a "70 percent disabled vet through the VA." He described back and knee problems. He also described the various medications he takes to enable him to sleep. The record does not support this argument.

Defendant complains that counsel was ineffective for not objecting to the trial court's instructions regarding self-defense, but he does not explain why the instructions were improper. Furthermore, there is nothing in the record to support defendant's statement that he was forced to testify in violation of his right against self-incrimination.

Defendant further complains that defense counsel failed to object to the PSIR. As discussed earlier, defense counsel did raise objections to some of the content of the PSIR, but did not raise two objections related to defendant's criminal history. As explained earlier, however, the record does not factually support one of these other matters and the other alleged error does not merit relief. Defendant has not established that he was prejudiced by counsel's failure to raise those objections. Defendant also presents a list of new objections to the PSIR, but the existing record does not support defendant's claims of inaccuracy with regard to these new matters.

Defendant also questions counsel's use of challenges during jury selection, but these were matters of trial strategy and defendant has not overcome the presumption of sound strategy. Defendant cannot demonstrate that counsel was ineffective merely because he disagrees with counsel's decisions regarding which jurors to keep on the jury.

In sum, defendant has failed to establish that he was denied the effective assistance of counsel at trial.

## B. PROSECUTORIAL MISCONDUCT

Next, defendant raises several additional claims of prosecutorial misconduct, none of which were preserved with an appropriate objection at trial. Accordingly, we review these claims for plain error affecting defendant's substantial rights. *Abraham*, 256 Mich App at 274-275.

Defendant primarily disagrees with the prosecutor's interpretation of evidence and decisions to emphasize the significance or insignificance of certain evidence. This does not amount to misconduct because a prosecutor is permitted to argue the evidence and any reasonable inferences arising from the evidence, *McElhaney*, 215 Mich App at 282, and is also permitted to introduce evidence that he legitimately believes will be accepted by the trial court, so long as it does not prejudice the defendant. *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123

(1999). Prosecutorial misconduct may not be predicated on good-faith efforts to admit evidence. *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). Our review of defendant's various claims reveals that the prosecutor did not violate these principles.

Defendant also couches his arguments in terms of the prosecutor presenting false evidence. It is well-established that a prosecutor may not knowingly present false testimony to obtain a conviction. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015). A conviction obtained with the knowing use of false testimony violates a defendant's right to due process. *Id*. In this case, however, there is no support in the record for defendant's suggestion that the prosecutor knowingly presented false evidence or testimony. Defendant's mere disagreement with the facts or reasonable inferences that can be drawn from the facts do not establish that any evidence was actually or knowingly false.

In sum, defendant has not established any plain error with regard to his unpreserved claims of prosecutorial misconduct.

## C. INADEQUATE INVESTIGATION

Defendant next argues that the police failed to adequately investigate this case, thereby violating his right to due process.[3] He maintains that a proper investigation would have uncovered exculpatory evidence. Because defendant did not challenge the adequacy of the police investigation in an appropriate motion or otherwise in the trial court, this issue is unpreserved. Therefore, we review this issue for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

A defendant has a due-process right to discovery of certain evidence possessed by the state. "[D]ue process requires the prosecution to disclose evidence in its possession that is exculpatory and material, regardless of whether the defendant requests the evidence." *People v Jackson*, 292 Mich App 583, 590-591; 808 NW2d 541 (2011). However, when the government fails to preserve evidence whose exculpatory value is indeterminate or only "potentially useful," the defendant has the burden of proving that the government acted in bad faith in failing to preserve the evidence. *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988); *People v Ricardo Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992).

In this case, however, defendant does not argue that the state failed to produce evidence in its possession, or failed to preserve evidence. Rather, defendant faults the police for not conducting an adequate investigation in the first instance. He complains that the police did not collect certain evidence that he believes would have been significant, and that the police failed to properly examine or test certain items of evidence. Neither the police nor the prosecution has a duty to assist a defendant in developing potentially exculpatory evidence. *People v Anstey*, 476 Mich 436, 461; 719 NW2d 579 (2006). Moreover, the bad-faith standard from *Youngblood* does not apply to evidence that has not yet been developed. *Id*. Defendant was free to attack the adequacy of the police investigation in an effort to argue that deficiencies in the investigation undermined the

---

[3] Defendant offers no factual support for his contention that his history as a sex offender somehow impacted the adequacy of the police investigation in this case.

weight and strength of the prosecution's evidence, but defendant had no due-process right to have the police search for or develop any evidence. The record does not show that any evidence in the state's possession was suppressed or not preserved. Accordingly, defendant has not established a due-process violation.

## D. JUDICIAL MISCONDUCT

Defendant also complains that the trial court was biased against him and engaged in conduct that denied him a fair trial. Defendant did not raise these claims in an appropriate motion in the trial court or otherwise object to the court's conduct. Therefore, this issue is also unpreserved, and our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

In *People v Willis*, 322 Mich App 579, 588; 914 NW2d 384 (2018), this Court observed:

A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial bias. *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011). In determining whether a trial judge's conduct deprives a defendant of a fair trial, this Court considers whether the "trial judge's conduct pierces the veil of judicial impartiality." [*People v*] *Stevens*, 498 Mich [162, 164, 170[; 869 NW2d 233 (2015)]. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. This is a fact-specific inquiry, and this Court considers the "cumulative effect" of any errors. *Id*. at 171-172. A single instance of misconduct generally does not create an appearance that the trial judge is biased, unless the instance is "so egregious that it pierces the veil of impartiality." *Id*. at 171. In evaluating the totality of the circumstances, this Court should consider a "variety of factors," including

the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id*. at 172.]

Defendant asserts that the trial court was more concerned with its docket than his right to a fair trial. The record indicates that the trial court was unwilling to schedule a new trial date when it appointed new counsel, but at that time trial was scheduled to begin almost two months later and the court indicated that it would leave it to defendant's new attorney to request additional time, if necessary. Defendant's new counsel never asked for any additional time or indicated that he was unprepared for trial. Accordingly, the record does not support defendant's claim that the trial court rushed this case to trial without affording defendant's new attorney adequate time to prepare.

Defendant also accuses the trial court of misconduct related to the removal of his first attorney. The record discloses that defendant's first attorney moved to withdraw due to a conflict of interest. The trial court granted the motion to withdraw after consulting with defendant, who

conceded that it was necessary to appoint new counsel. There is no evidence that the removal of defendant's first attorney was somehow orchestrated to prevent defendant from receiving a fair trial.

Defendant argues that the trial court engaged in misconduct by denying his request for an expert witness. A judge's mere ruling against a litigant generally does not establish a disqualifying bias. *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009). As discussed earlier, the trial court's ruling was not erroneous. There is no basis for concluding that the court's ruling was the result of bias or misconduct.

Defendant also complains that the trial court did not ensure that all evidence was presented to the jury. This argument is without merit because it was up to the parties to decide what evidence to present. The trial court's role was to resolve disputes related to the evidence. Defendant also argues that the court failed to control the proceedings by allowing the prosecutor to offer improper evidence in an effort to deprive defendant of his right to present a self-defense theory. Defendant does not explain what evidence the trial court improperly allowed, and the record clearly indicates that defendant was permitted to offer evidence in support of a claim of self-defense. Defendant also questions whether evidence supported matters involving his knowledge and intent, and he accuses the trial court of allowing the prosecutor to make improper arguments related to these issues, but there were no objections to the prosecutor's arguments and, as previously discussed, the prosecutor's arguments were based on permissible inferences arising from the evidence.

Defendant also claims that the trial court rushed him when he attempted to explain his actions to the jury, but he has not provided a citation to the record in support of this argument and our review of the record fails to reveal support for this claim. Likewise, there is no support in the record for defendant's claim that the trial court required him to testify.

Defendant also argues that the trial court erred by not ruling on his motion for relief from judgment. That motion was prematurely filed before entry of a judgment of conviction, which remained subject to appellate review. MCR 6.501. Therefore, the court properly declined to rule on it.

Defendant also argues that the trial court erred by instructing the jury on self-defense in accordance with M Crim JI 7.15 (the use of deadly force in self-defense) and 7.16 (duty to retreat to avoid using force or deadly force). Although defendant argues that the court should have given M Crim JI 7.17 (addressing the lack of duty to retreat while in one's own dwelling), the use notes for that instruction state that M Crim JI 7.17 was deleted as a model instruction in 2008 because the standards on duty to retreat are contained in M Crim JI 7.16. The trial court's instructions to the jury included an explanation that defendant did not have a duty to retreat from his own dwelling. Accordingly, there is no merit to this claim.

Defendant argues that the trial court improperly accused defense counsel of having a lack of respect for the legal community, which had the effect of intimidating counsel and causing him to remain silent out of fear. This claim relates to a remark at sentencing. Contrary to what defendant argues, the court did not accuse defense counsel of having a lack of respect, but rather was responding to counsel's request that the court respect the jury's verdict by deleting from the PSIR all references to defendant's sexual conduct. The court remarked that it respected the jury's

verdict and commented that it was "amazed at the respect in this legal community." The record does not support defendant's claim that the court's remarks were intimidating or caused defense counsel not to object to the PSIR.

Defendant complains that the trial court did not hold a hearing to determine if he could pay for an attorney. Defendant seems to be challenging the court's assessment of attorney fees at sentencing. Defendant does not argue that the court failed to properly determine the cost of his legal assistance. See *People v Lewis*, 503 Mich 162, 168; 926 NW2d 796 (2018); MCL 769.1k(1)(b)(*iv*). Instead, defendant appears to claim that the court should have determined his ability to pay before assessing any attorney fees. However, an "ability-to-pay assessment is only necessary when that imposition is enforced and the defendant contests his ability to pay." *People v Jackson*, 483 Mich 271, 298; 769 NW2d 630 (2009). Thus, the trial court was not required to assess defendant's ability to pay at the time it imposed the fees.

Defendant also asserts that the court improperly excluded entire classes of people from the jury. This argument is also without merit. During voir dire, defense counsel questioned potential jurors about ownership of swords or machetes to assess the jurors' opinions regarding whether ownership of such weapons indicate that an individual is aggressive. One juror stated that he was a combat veteran who kept a machete as a souvenir from his time with the army. Nothing in the record indicates that the court excluded certain jurors merely because they owned such weapons. Defendant has not shown that veterans and sword owners were prohibited from serving on the jury merely because those subjects were addressed during voir dire.

Defendant also makes generalized and unfounded allegations that the court did not submit all of the evidence to the jury, suppressed defendant's rights, and was unprepared for this trial. None of these allegations are supported by the record.

In sum, the record does not support defendant's myriad claims of judicial misconduct.

We affirm defendant's convictions and sentences, but remand for further proceedings consistent with this opinion related to defendant's presentence report. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens